2023 IL App (1st) 200936

FIRST DISTRICT
SECOND DIVISION
March 31, 2023

No. 1-20-0936

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 03 CR 06617 (02) |
| | ) | |
| DEAUNTE ERWIN, | ) | Honorable |
| | ) | William G. Gamboney, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Justices Howse concurred in the judgment and opinion.
Justice Cobbs specially concurred, with opinion.

## OPINION

¶ 1    After he was arrested on February 17, 2003, pursuant to an investigative alert issued by Chicago Police Department (CPD) detectives, petitioner Deaunte Erwin was convicted of the first degree murder of Carlyle Barnhill and the armed robberies of Larry Martin and Christopher Holmes. In his successive post-conviction petition, he alleged that his arrest violated the search and seizure clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 6), for the reasons first announced in the now-vacated portions of *People v. Bass*, 2019 IL App (1st) 160640, *aff'd in part & vacated in part*, 2021 IL 125434, and recently reiterated in *People v. Smith*, 2022 IL App (1st) 190691. He appeals the circuit court's denial of leave to file.

¶ 2    Petitioner does not claim that the officers, in relying on the detectives' investigative alert, lacked probable cause to arrest him. He lost that argument long ago, at his suppression hearing. His only claim is that an arrest based on an investigative alert, even when supported by probable cause, violates our state constitution's analogue of the fourth amendment, albeit not the fourth

amendment itself.

¶ 3    The facts of petitioner's offenses and trial are set forth in our prior decisions and do not bear repetition here. See *People v. Erwin*, No. 1-07-0687 (2009) (unpublished order under Illinois Supreme Court Rule 23); *People v. Erwin*, 2011 IL App (1st) 101815-U. This much will suffice: In 2003, petitioner was detained on an unrelated matter; the officers arrested him for murder upon discovering that an investigative alert had been issued; more than enough time had passed for the detectives to apply for an arrest warrant; petitioner confessed when questioned; and he would now like that confession suppressed, as the product of a warrantless and thus illegal arrest. With that said, we proceed directly to the issues at hand.

¶ 4    We decline to decide whether an arrest based solely on the authority of a police-issued investigative alert, instead of a judicially issued arrest warrant, violates our state constitution. See *Bass*, 2019 IL App (1st) 160640, ¶¶ 4, 31-32 (describing CPD's investigative alert system). Because the good-faith exception to the exclusionary rule applies, petitioner would not be entitled to the suppression of any evidence (principally, his confession), even if we now held his arrest to be illegal. For this reason alone, petitioner cannot show prejudice, as required for leave to file his successive petition. 725 ILCS 5/122-1(f) (West 2020).

¶ 5                                                    I

¶ 6    A bit of recent (and local) legal history will give context to petitioner's claim. As far as we know, from the briefs and from our own research, the constitutionality of investigative alerts was first called into question in 2012, some nine years after petitioner was arrested, in the special concurrence filed in *People v. Hyland*, 2012 IL App (1st) 110966, ¶¶ 38-52 (Salone, J., specially concurring, joined by Neville, J.).

¶ 7    *Hyland* was decided on the workaday issue of probable cause: the defendant was arrested

pursuant to an investigative alert, but the evidence at the suppression hearing failed to establish that the alert itself was based on facts that gave rise to probable cause for an arrest. *Id.* ¶¶ 25, 29-31 (majority opinion). The special concurrence also took the view that any arrest pursuant to an investigative alert is *per se* unconstitutional, even if the alert is later found to have been based on probable cause. The problem, as the *Hyland* concurrence saw it, was that the finding of probable cause had only been made in advance of the arrest by the police, when it should have been made by a judge issuing an arrest warrant. *Id.* ¶¶ 46-47 (Salone, J., specially concurring, joined by Neville, J.).

¶ 8       The *Hyland* concurrence thus stood as a notable objection to a longstanding and judicially tolerated police practice. But because "the words and ideas expressed in [a] special concurrence" "do not speak for this court," it did not change what seemed to be settled law. *Southwestern Illinois Development Authority v. Al-Muhajirum*, 318 Ill. App. 3d 1005, 1008 (2001). Nor did it provide cause for petitioner, or others like him, to raise a fresh challenge to an old arrest in a successive petition.

¶ 9       Three years later, *People v. Jones*, 2015 IL App (1st) 142997, ¶¶ 19-21, was decided on the same narrow and unremarkable ground as *Hyland*, a case on which *Jones* expressly relied. In dictum, *Jones* took "note" of the special concurrence, echoing its view that investigative alerts pose a "troubling" and still "unresolved" constitutional question, and one that "[h]opefully *** will be addressed on appeal at some point." *Id.* ¶ 22. But to be clear, it was not addressed in *Jones*. The law had not budged; there was no precedent holding that investigative alerts were anything other than a constitutionally permissible practice, though judicial skepticism, if not outright disapproval on this point had no doubt emerged.

¶ 10    The question eventually took center stage in *Bass*, 2019 IL App (1st) 160640. Over a vigorous partial dissent, the *Bass* majority held that an arrest made solely on the authority of an investigative alert *per se* violates the search-and-seizure clause of the Illinois Constitution, even if the alert was based on probable cause (as it was in *Bass*). *Id.* ¶¶ 36-71.

¶ 11    The majority recognized that such arrests do not violate the federal constitution's fourth amendment, which permits public warrantless arrests that are based on probable cause, even if the police had time to get an arrest warrant. *Id.* ¶ 37; *United States v. Watson*, 423 U.S. 411, 416-17 (1976); *Carroll v. United States*, 267 U.S. 132, 156 (1925). The fourth amendment simply requires that the arrestee is promptly brought before a judge, for a probable-cause determination, after the warrantless arrest. *County of Riverside v. McLaughlin*, 500 U.S. 44, 53 (1991); *Gerstein v. Pugh*, 420 U.S. 103, 113-19 (1975).

¶ 12    But in the *Bass* majority's view, the search-and-seizure clause departs from the fourth amendment in this respect, by generally prohibiting warrantless arrests, except in certain exigent circumstances. *Bass*, 2019 IL App (1st) 160640, ¶¶ 39-67. The investigative alert system bypasses this requirement and substitutes the judgment of the police for that of a neutral magistrate, the majority reasoned; the Illinois Constitution requires the latter, not the former, to render a probable-cause determination *before* the arrest is made, upon review of a written affidavit setting forth the known facts. *Id.*

¶ 13    Here, petitioner moved for leave to file his successive petition about two weeks after *Bass* was decided. Strangely enough, the timing appears to be a coincidence: he did not cite *Bass* in his petition; instead, he relied on *Jones*, which was decided after his initial petition was filed, as cause for his failure to raise the issue in an earlier proceeding. (That argument would have failed, for reasons we have already noted.) But in short order, he got wind of *Bass* and moved to

amend his motion accordingly. The circuit court granted that motion but ultimately denied him leave to file, in January 2020, for two reasons.

¶ 14    First, *Bass* was "repudiated" by *People v. Braswell*, 2019 IL App (1st) 172810, ¶ 37. The circuit court did not explain any further how it chose between these admittedly "conflicting"— and equally binding—authorities from the appellate court. Second, even if *Bass* was correctly decided, it would not apply to petitioner, because the rule it announced did not meet the criteria for retroactive application on collateral review. See *Teague v. Lane*, 489 U.S. 288 (1989); *People v. Flowers*, 138 Ill. 2d 218, 237-38 (1990) (*Teague* framework applies to proceedings under Post-Conviction Hearing Act).

¶ 15    While petitioner's appeal from the denial of leave to file was pending, our supreme court decided the State's appeal in *People v. Bass*, 2021 IL 125434. It affirmed the appellate court's judgment on a narrow ground, one on which all three appellate justices had agreed: the police exceeded the permissible scope of a traffic stop, for reasons we need not dwell on here. *Id.* ¶¶ 15-26; see *Bass*, 2019 IL App (1st) 160640, ¶¶ 73-78; *id*. ¶ 114 (Mason, J., concurring in part and dissenting in part). Based on principles of constitutional avoidance, and the supreme court's prudential objections to advisory opinions, it "vacated" the portions of the appellate opinion that addressed the "constitutionality of investigative alerts" and associated issues. *Bass*, 2021 IL 125434, ¶¶ 30-31.

¶ 16    The vacatur in *Bass* left petitioner without any precedent to support his claim. Neither *Hyland*, a special concurrence, nor *Jones*, with its *dictum*, stood as precedent on this issue. The first precedent was *Bass*, but once an appellate decision has been vacated by our supreme court, it "carries no precedential weight." *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 66 (2006); *Carmichael v. Professional Transportation, Inc.*, 2021 IL App (1st) 201386, ¶ 22.

¶ 17    Meanwhile, appellate cases from this district, both before and after the vacatur in *Bass*, uniformly sided with *Braswell*, 2019 IL App (1st) 172810, and upheld the constitutionality of investigative alerts issued by the CPD. See *People v. Butler*, 2021 IL App (1st) 171400, ¶ 55; *People v. Little*, 2021 IL App (1st) 181984, ¶¶ 63-64; *People v. Simmons*, 2020 IL App (1st) 170650, ¶¶ 62-64; *People v. Bahena*, 2020 IL App (1st) 180197, ¶¶ 59-64; *People v. Thornton*, 2020 IL App (1st) 170753, ¶¶ 45-50. The Third District likewise upheld the Peoria Police Department's own practice of using investigative alerts. *People v. Harris*, 2022 IL App (3d) 200234, ¶ 12.

¶ 18    But the conflict in appellate authority re-emerged with the recent decision in *Smith*, 2022 IL App (1st) 160640, ¶ 99, which reiterated the *Bass* majority's holding that an arrest based on an investigative alert *per se* violates our state constitution. *Smith* was issued after this case was briefed, and we granted petitioner's motion to cite it as additional authority. *Smith* now leaves petitioner right back where he was at the time of summary dismissal—with the issue having received conflicting answers in the appellate court, and yet to be resolved definitively by our supreme court.

¶ 19                                        II

¶ 20    If we sided with *Smith*, the one appellate ruling that favors petitioner's claim, that would not necessarily entitle him to relief; it would only be the first step toward establishing prejudice. And even if our supreme court eventually agreed with *Smith* and petitioner's argument here, that would still not necessarily entitle him to relief.

¶ 21    Petitioner's opening brief, and the circuit court's order denying leave to file, both assume that the next question to be answered is whether a ruling in petitioner's favor would apply retroactively to a case pending on collateral review. But retroactivity is not the next step. If we

held that petitioner's arrest was unconstitutional, the next step would be determining whether that unconstitutional seizure *warrants the remedy of suppression*—what is often called the "exclusionary rule." *People v. LeFlore*, 2015 IL 116799, ¶ 22. Without suppression, petitioner's confession stands as admissible evidence, and he has no favorable ruling to apply, retroactive or otherwise.

¶ 22    And whether petitioner would be entitled to suppression, if he first convinced us that his arrest violated the Illinois Constitution, would depend, among other things, on whether the good-faith exception to the exclusionary rule applied. See *id.* ¶¶ 22-25.

¶ 23    For a stark illustration of this point, consider that the defendant in *Carpenter v. United States*, 585 U.S. ___, 138 S. Ct. 2206 (2018), was not entitled to the suppression of his illegally obtained cell-site location information (CSLI), despite prevailing in that landmark case, because the court of appeals on remand found the good-faith exception applicable. See *United States v. Carpenter*, 926 F.3d 313, 317-18 (6th Cir. 2019).

¶ 24    And we recently applied the good-faith exception in a case that was pending on *direct* review when the *Carpenter* decision was issued; as a result, we denied the defendant's request for a suppression remedy, even though *Carpenter* applied and thus rendered the warrantless collection of his CSLI illegal. *Potts*, 2021 IL App (1st) 161219, ¶¶ 108-131; *People v. Erickson*, 117 Ill. 2d 271, 288 (1987) (new constitutional rulings apply retroactively to all cases pending on direct appeal); *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987); see also *United States v. Chavez*, 894 F.3d 593, 608 (4th Cir. 2018) (*Carpenter* is "controlling going forward," but does not afford relief to defendant whose CSLI was collected beforehand).

¶ 25    In short, the good-faith exception, not general principles of retroactivity and/or collateral review, ultimately determines whether petitioner would be entitled to a remedy.

¶ 26    The rationale for the good-faith exception is well-known, so a brief recap will suffice. There is no constitutional right to the suppression of evidence obtained as a result of an illegal search or seizure. *LeFlore*, 2015 IL 116799, ¶ 22. The exclusionary rule is a judicially created remedy whose sole purpose is to deter future constitutional violations; thus, it is to be applied only where its deterrence benefits outweigh the substantial social costs of excluding reliable, probative evidence of guilt. *Id.* ¶ 23. When the police conduct a search or seizure based on an "objectively reasonable good-faith belief" that it is lawful, the rule's deterrence rationale has little or no force, and the exclusion of evidence is not warranted. (Internal quotation marks omitted.) *Id.* ¶ 24.

¶ 27    One source of an "objectively reasonable good-faith belief" (among others) is "binding appellate precedent" that existed at the time of the search or seizure in question but was later overruled or limited. See *Potts*, 2021 IL App (1st) 161219, ¶ 112-13 (distinguishing versions of good-faith exception). Since this version of the good-faith exception was articulated in *Davis v. United States*, 564 U.S. 229 (2011), and adopted by our supreme court in *Leflore*, 2015 IL 116799, we will refer to it as the *Davis/Leflore* exception.

¶ 28    "Binding appellate precedent" is a term of art in this context, and not all of its niceties are relevant here. The key point is that the category includes, but is not limited to, appellate holdings that specifically authorized the type of search or seizure in question. But because there will not always be a precedent squarely on point, and the police inevitably must act on incomplete and ever-evolving guidance from the reviewing courts, they can—indeed, they must—take a broader view of the existing law. *Id.* ¶¶ 19-20.

¶ 29    Absent directly applicable precedent, the police may rely on a well-established doctrine that is " 'not exactly on point' " (*id*. ¶ 44, quoting *United States v. Stephens*, 764 F.3d 327, 337

(4th Cir. 2014)) if its underlying rationale is nonetheless " 'sufficiently clear and apposite' " (*id.* ¶ 20, quoting *United States v. Sparks*, 711 F.3d 58, 65 (1st Cir. 2013) and thus " 'widely and reasonably understood' " (*id.* ¶ 44, quoting *Stephens*, 764 F.3d at 337) to resolve the novel question at hand.

¶ 30 And if there is no one case that qualifies as " 'binding appellate precedent' " in this broader sense of the term, *Leflore* requires us to conduct a "general good-faith analysis" and determine " 'whether a reasonably well-trained officer would have known that the search [or seizure] was illegal in light of all of the circumstances.' " *Id.* ¶ 29 (quoting *Herring v. United States*, 555 U.S. 135, 145 (2009)). In the context of police reliance on appellate precedent, the question becomes whether it was "objectively reasonable" for the police to rely on the overall "legal landscape that existed at the time," meaning that a reasonable officer, surveying the law as a whole, would have "no reason to suspect" that the search or seizure in question was unlawful. *Id.* ¶ 31.

¶ 31 In *Leflore*, our supreme court applied this version of the good-faith exception to a claim raised under both the fourth amendment and the Illinois Constitution's search-and-seizure clause, so there is no doubt that it applies in the latter context and thus here. *Id.* ¶¶ 15-18, 62-67. The State has raised it, so there is no question of forfeiture. See *People v. Turnage*, 162 Ill. 2d 299, 313 (1994) (State's burden to raise good-faith exception). And though the circuit court did not address the good-faith exception, we can affirm the denial of leave to file on any basis supported by the record. *People v. Horton*, 2021 IL App (1st) 180551, ¶ 42. Whether the exception applies is a question of law that we review *de novo*. *People v. Manzo*, 2018 IL 122761, ¶ 67.

¶ 32                                        III

¶ 33 When petitioner was arrested in 2003, no case from a reviewing court had directly ruled

on the legality of investigative alerts—or "stop orders," as they were formerly called (*Bass*, 2021 IL 125434, ¶ 3)—under our search-and-seizure clause (or, for that matter, the fourth amendment).

¶ 34 And not because the practice was new. It was already longstanding and well entrenched by 2003. Still, it appears that no litigant had ever argued that an arrest, based on demonstrated probable cause, was nonetheless unconstitutional because the arresting officer relied on a police-issued investigative alert in lieu of a judicially issued warrant. See *Hyland*, 2012 IL App (1st) 110966, ¶ 39 (Salome, J., specially concurring, joined by Neville, J.) (noting that issue had yet to be addressed); *Bass*, 2019 IL App (1st) 160640, ¶ 121 (Mason, J., concurring in part & dissenting in part) (noting that no litigant had raised issue in years since *Hyland*).

¶ 35 There are scores of cases, dating back at least to the 1970s, in which we matter-of-factly state, by way of background, that the defendant was arrested pursuant to an investigative alert or stop order. We will not try to catalog them here. The point is simply that this practice routinely went unchallenged, even largely unremarked, for several decades.

¶ 36 And when the investigative alert or stop order was central to a point of error raised on appeal, the issue—and its resolution—would fit the mold of later cases like *Hyland* and *Jones*. The actual dispute would be about probable cause, and the rule we would apply was that the State could demonstrate probable cause by relying, in whole or in part, on the facts known to the officer(s) who issued the investigative alert. See, *e.g.*, *People v. Simpson*, 129 Ill. App. 3d 822, 830-31 (1984); *People v. Green*, 88 Ill. App. 3d 929, 931-33 (1980); *People v. Harper*, 16 Ill. App. 3d 252, 257 (1973).

¶ 37 The same rule applied when the arresting officers relied on other official channels of police communication, such as a radio bulletin or dispatch, to arrest a suspect before a warrant

had been issued. See, *e.g.*, *People v. Lawson*, 298 Ill. App. 3d 997, 1001-03 (1998) (collecting cases); *People v. Brooks*, 13 Ill. App. 3d 1003, 1005-07 (1973); see also *United States v. Hensley*, 469 U.S. 221, 231 (1985) (noting that Court's precedent in *Whiteley v. Warden*, 401 U.S. 560 (1971) "supports the proposition that, when evidence is uncovered during a search incident to an arrest in reliance merely on a flyer or bulletin, its admissibility turns on whether the officers who *issued* the flyer possessed probable cause to make the arrest" (emphasis in original)).

¶ 38     As we summed up the general rule in one characteristic case: "Police officers are entitled to act in reliance upon information received in official police communications. [Citations.] To predicate an arrest, however, the communication must be based upon facts sufficient to constitute probable cause for arrest." *People v. Rimmer*, 132 Ill. App. 3d 107, 113 (1985).

¶ 39     The existing cases, in short, never hinted that an arrest made pursuant to an investigative alert raised any constitutional question beyond the existence of probable cause. A reasonable officer would thus be entitled to conclude that a showing of probable cause at a suppression hearing, based on the facts known to law enforcement as a whole, would validate a warrantless arrest without further ado.

¶ 40     And that impression was only reinforced by the "legal landscape" more generally. After all, the cases involving warrantless arrests made pursuant to investigative alerts, police bulletins, or other such communications appeared to be a straightforward application of two unassailable legal principles: (1) that public, warrantless arrests are constitutional, as long as the police have probable cause and (2) the "collective knowledge" doctrine, which, roughly put, allows officers to act on facts known to other members of law enforcement without having personal knowledge of those facts themselves. See, *e.g.*, *People v. Buss*, 187 Ill. 2d 144, 204 (1999) (officers may rely

on each other's collective knowledge to establish probable cause); *Hensley*, 469 U.S. at 230-32.

¶ 41    Neither petitioner nor the *Bass* majority (nor *Smith* following it) claims that the alleged constitutional problem with arrests based on investigative alerts results from the application of the collective-knowledge doctrine in this context. See *Bass*, 2019 IL App (1st) 160460, ¶ 60. So we can leave this doctrine aside. The problem is said to arise, instead, from the failure to secure an arrest warrant. But the broader "legal landscape" gave no hint that one was required.

¶ 42    For one, as we noted above, it was settled law that warrantless arrests made in public and based on probable cause do not violate the fourth amendment, even when the officers had time to get a warrant before making the arrest. *Watson*, 423 U.S. at 416-17; *Carroll*, 267 U.S. at 156. Although petitioner's claim here arises under the search-and-seizure clause of our *state* constitution, our jurisprudence under the fourth amendment, and the *Watson* decision in particular, remains relevant for two reasons.

¶ 43    First, the Supreme Court's fourth-amendment doctrine is based, in significant part, on the fact that a tolerance of warrantless public arrests is a deeply rooted feature of our nation's legal history. It was inherited from the common law, has been uniformly reinforced by legislative and judicial judgment at the state and federal levels, and has long been "the prevailing rule under state constitutions." *Watson*, 423 U.S. at 418-19, 422-23. Thus, while *Watson* acknowledged that the "judicial preference" is for the police to obtain an arrest warrant where it is "practicable" to do so, the Court declined to "transform" this preference into a constitutional rule "when the judgment of the Nation and Congress has for so long been to authorize warrantless public arrests on probable cause," without conditioning that authorization on the presence of any exigent circumstances. *Id.* at 423-24.

¶ 44    Second, our supreme court has long held that the federal and state constitutional

No. 1-20-0936

provisions are to be interpreted in "limited lockstep" and, in this context, has expressly rejected the idea that the search-and-seizure clause "guarantees more individual rights" than the fourth amendment. *People v. Tisler*, 103 Ill. 2d 226, 241 (1984); see also *People v. Caballes*, 221 Ill. 2d 282, 316-17 (2006). And our supreme court has reiterated the settled rule about warrantless arrests countless times: they are generally permissible, when made in public, even if the police had time to secure a warrant first. See, *e.g.*, *Buss*, 187 Ill. 2d at 204; *People v. Campbell*, 67 Ill. 2d 308, 313 (1977). For example, in *Buss*, 187 Ill. 2d at 204, our supreme court explicitly said that a warrantless arrest founded on probable cause is permissible under the state and federal constitutions, without suggesting any distinction in their respective warrant requirements.

¶ 45    Other cases are admittedly not always clear whether this rule is being applied to a claim raised under the state or federal constitution. But *Buss* aside, given the near identicality of the relevant provisions and our supreme court's lockstep precedents, a reasonable officer could—and surely would—see this as a distinction without a difference, until such time as an appellate precedent plainly stated otherwise. In 2003, the relevant time period in our case, that had not happened. See *People v. Charles*, 2022 IL App (1st) 210247-U, ¶¶ 12-14 (granting *Finley* motion, based on *Davis-Leflore* exception, where no appellate authority addressed issue at time of 2011 arrest). Just as the *Bass* majority correctly took *Watson*'s holding to immediately settle the fourth-amendment question (*Bass*, 2019 IL App (1st) 160640, ¶ 37), at the time of petitioner's arrest, a reasonable officer would surely be entitled to reach the same conclusion under the search-and-seizure clause of the Illinois Constitution.

¶ 46    There is of course much more that could be said about the lockstep doctrine and other relevant precedents from our supreme court, but we will leave the matter at that. The overall legal landscape at the time of petitioner's arrest leaves no doubt that a reasonable officer, striving

in good faith to comply with the law, would conclude that a warrantless public arrest, pursuant to an investigative alert, was perfectly legal under both Illinois and federal constitutional law—as long as there was probable cause for the arrest, as is uncontested here.

¶ 47    We thus need not decide whether the holding in *Smith*, which echoed the *Bass* majority's now-vacated holding, was correctly decided. Even if petitioner could establish a constitutional violation, the good-faith exception would apply here. Because petitioner would not be entitled to a suppression remedy, he cannot establish prejudice. The denial of leave to file his successive petition is affirmed on this narrow ground.

¶ 48                                    IV

¶ 49    The judgment of the circuit court of Cook County is affirmed.

¶ 50    Affirmed.

¶ 51    JUSTICE COBBS, specially concurring:

¶ 52    Although I ultimately agree that the circuit court's denial of defendant's motion for leave to file a successive postconviction petition should be affirmed, I would base affirmance on defendant's failure to establish cause as required under the Post-Conviction Hearing Act (725 ILCS 5/122-1(f) (West 2020)).

¶ 53    In a successive petition, a defendant may raise a waived constitutional claim such as the one before this court by satisfying the cause-and-prejudice test. *People v. Coleman*, 2013 IL 113307, ¶¶ 82-83. The cause-and-prejudice test for a successive petition involves a higher standard than for a first-stage initial petition. *People v. Smith*, 2014 IL 115946, ¶ 35. To establish cause, a defendant must show some objective factor external to the defense that impeded his ability to raise the claim in the initial postconviction proceeding. 725 ILCS 5/122-1(f) (West 2020).

¶ 54    Defendant argues that he has established cause "as he could not have previously relied on the reasoning in [*People v. Bass*, 2019 IL App (1st) 160640, *aff'd in part, vacated in part*, 2021 IL 125434] that all arrests solely based on investigative alerts are illegal." Defendant was convicted in 2006 and his initial postconviction petition was filed in 2010. *Bass* was issued in 2019; however, in 2021, the Illinois Supreme Court vacated the portion of this court's decision finding the use of investigative alerts unconstitutional. As such, he cannot rely on *Bass* for cause.

¶ 55    Instead, this court allowed defendant to cite to additional authority, namely *People v. Smith*, 2022 IL App (1st) 190691. There, this court held that the defendant's warrantless arrest was improper under the Illinois Constitution because it was premised solely on an investigative alert issued six months earlier. *Id.* ¶ 66. Defendant now argues that the *Smith* decision "provides critical support" for his claim that his arrest was illegal as it was solely based on an investigative alert, and the decision and its reasoning was not previously available to him.

¶ 56    In response, the State contends that defendant's own posture—that since the 1800s, our supreme court has interpreted the Illinois Constitution to require probable cause to be supported by facts included in a sworn affidavit and submitted to a neutral magistrate for assessment—belies his assertion that the challenge to his arrest based on an investigative alert could not have been raised earlier. Effectively, defendant's challenge was not dependent on the later appellate court decisions he cites within his brief. I agree with the State on this point.

¶ 57    In *People v. Guerrero*, 2012 IL 112020, ¶ 20, our supreme court expressly stated that "the lack of precedent for a position differs from 'cause' for failing to raise an issue, and a defendant must raise this issue, even when the law is against him, in order to preserve it for review." We find this principle applicable to the case before us. The clause in the Illinois Constitution upon which defendant's claim is based has been in existence for over a century, and the issue of

unconstitutional arrests is not novel; rather, a large portion of criminal jurisprudence is comprised of this variety of claim. Although we are not aware of any cases specifically concerning the constitutionality of investigative alerts, nothing precluded defendant from challenging that aspect of his arrest previously. See *Guerrero*, 2012 IL 112020, ¶ 20 ("[T]he mere possibility that defendant's claim would have been unsuccessful does not equate to an objective factor external to the defense which precluded him from raising [the claim] in his initial postconviction petition.").

¶ 58 This conclusion is further bolstered by our supreme court's decision in *People v. Dorsey*, 2021 IL 123010. There, the juvenile defendant challenged his sentence under the proportionate penalties clause of the Illinois Constitution and argued that he had established cause because *Miller v. Alabama* was issued after he filed his initial postconviction petition. *Id.* ¶ 68. In holding that the defendant could not establish cause, the supreme court stated that "*Miller*'s unavailability prior to 2012 at best deprived [the] defendant of 'some helpful support' for his state constitutional claim, which is insufficient to establish cause." *Id.* ¶ 74; see also *People v. Clark*, 2023 IL 127273, ¶ 67 (citing to *Dorsey* in rejecting the defendant's reliance on two precedential cases to support his argument that he established cause).

¶ 59 Just as in *Guerrero* and *Dorsey*, I believe that *Smith*'s nonexistence at the time defendant's initial postconviction petition was filed did not prevent him from raising the claim that his warrantless arrest based on an investigative alert was unconstitutional. It was not necessary for him to wait until there was caselaw supporting his position to raise the argument. Accordingly, because defendant is unable to establish cause for his successive postconviction petition, and I would affirm the circuit court's denial of leave to file his successive postconviction petition. See *People v. Brown*, 225 Ill. 2d 188, 207 (2007) (where defendant has failed to establish cause, it is not necessary for the court to consider prejudice).

¶ 60    As a final aside, the majority's decision to resolve the issue of whether the good faith exception would apply regardless of the constitutionality of warrantless arrests based on investigative alerts gives me pause. The defendant has not been given any opportunity to develop an adequate factual record to contest the good faith exception, which we point out is the State's burden to prove. I believe it to be premature to consider the application of the good faith exception, particularly at the leave-to-file stage in the pleadings. To do so so is contrary to the general principle that a reviewing court should avoid speculative analysis on issues that have not been adequately developed. I am mindful of our supreme court's preference for review of claims on a case-by-case basis with a fully developed record and its rejection of applying "a broad-sweeping 'categorical approach' " to certain claims. *People v. Veach*, 2017 IL 120649, ¶¶ 46-48.

¶ 61    Here, I would adopt the position taken in *People v. Walker*, 2022 IL App (1st) 210508-U, ¶ 30. Although that case involved an initial postconviction petition, the court nevertheless rejected the State's argument on appeal that the good faith exception would apply because it would be premature and "[m]ore information and evidence would be necessary about the procedures by which investigative alerts are issued and executed, both in general and in petitioner's case specifically, before the court could conclude that the good faith exception to the exclusionary rule applies." See also *People v. Pierce*, 2022 IL App (1st) 201040-U, ¶ 21 (stating that "reliance on the good faith exception to the exclusionary rule would be speculative at this stage").

¶ 62    For these reasons, I would affirm the circuit court's denial of defendant's leave-to-file motion because defendant failed to establish cause to avoid the statutory waiver set out in section 122-3 of the Act (725 ILCS 5/122-3 (West 2020)).

---

**People v. Erwin, 2023 IL App (1st) 200936**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 03-CR-06617(02); the Hon. William G. Gamboney, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Eric E. Castañeda, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Douglas P. Harvath, Brian K. Hodes, and Hareena Meghani-Wakely, Assistant State's Attorneys, of counsel), for the People. |

---