2025 IL App (1st) 232488-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FIRST DIVISION
June 16, 2025

No. 1-23-2488

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff/Respondent-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 02-CR-9220 |
| | ) | |
| ROBERTO MATA, | ) | The Honorable |
| | ) | Laura Ayala-Gonzalez, |
| Defendant/Petitioner-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Pucinski and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Petitioner's appointed counsel did not fail to act with due diligence by continuing to assert his claim, which was that his warrantless arrest pursuant to an investigative alert was unconstitutional, in the context of a petition for relief from judgment instead of reframing it for presentation through a successive postconviction petition.

¶ 2    Petitioner Roberto Mata appeals from the denial of his petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2018)) (hereinafter section 2-1401). By that petition, petitioner sought to have his convictions for first degree murder and aggravated battery with a firearm vacated on the grounds that they were based in part upon his statement to police made after his warrantless arrest pursuant to an "investigative alert." Petitioner

contends on appeal that the attorney who was appointed to represent him in presenting the 2-1401 petition failed to exercise due diligence by not seeking to reformulate his claims for presentation through a second successive petition for postconviction relief. We reject petitioner's argument and affirm the judgment of the trial court.

¶ 3                                            BACKGROUND

¶ 4        Petitioner is serving a natural life sentence imposed in 2005 on convictions for two counts of first degree murder and a concurrent 10-year sentence for aggravated battery with a firearm. These convictions arose from a gang-related shooting incident that occurred in the early morning hours of March 16, 2002, which resulted in the deaths of Sandar Mosqueda and Adrian Padilla and in injury to Edwin Delgado.

¶ 5        At approximately 7 p.m. on March 16, 2002, officers from the Chicago Police Department (CPD) went to petitioner's residence, knocked on the door, and petitioner answered it. After petitioner identified himself, the officers placed him under arrest. This was done without an arrest warrant.[1] At a later suppression hearing, petitioner's counsel acknowledged that probable cause to arrest him existed at the time. The trial court also later made a specific finding "that [petitioner's] arrest was lawful, that there was probable cause for his arrest and consequently taking him into custody was consistent with the Fourth Amendment."

¶ 6        The day after his arrest, petitioner gave a videotaped statement. In that statement, petitioner explained that he had attended a party on the night at issue with his girlfriend Esmeralda Herrera and other friends. After leaving the party, he heard his friend Reynaldo Mares shouting his name. Turning around, he saw two men holding Mares by his arms while two other men were also

_____

[1] We find no affirmative indication in the record that CPD issued an investigative alert in this case. However, we accept that this occurred for purposes of deciding this appeal.

surrounding him. In response, petitioner fired a gunshot in the direction of the men. This caused the men to back away, but petitioner saw one man reach into his pocket. Fearing that the man was reaching for a gun, petitioner reacted by firing five more gunshots in the direction of the men. The men's backs were to petitioner, and they were walking away at the time he fired the shots. Petitioner and his friends then ran to their car and drove away.

¶ 7        Prior to trial, petitioner's counsel filed a motion to suppress all statements by petitioner and to suppress other evidence seized from his home at the time of arrest. Petitioner's argument was that his statement was not made voluntarily, because the police had subjected him to various forms of physical and mental abuse over a period of two days and had not given him *Miranda* warnings. The trial court severed the two aspects of this motion for hearing. It ultimately granted that part of the motion to suppress dealing with evidence seized from petitioner's home. However, petitioner's counsel apparently never pursued a further hearing or ruling from the trial court on the aspect of petitioner's motion involving suppression of his statements to police.

¶ 8        At petitioner's trial, the State's evidence consisted largely of petitioner's videotaped statement and the testimony of Delgado. Delgado testified that he became engaged in a gang-related altercation with Mares, during which Mares called to petitioner after Delgado had pinned Mares to the ground. In response, petitioner pointed a gun at Delgado, and Delgado let go of Mares. Delgado then turned and backed away, but petitioner fired six shots in his direction, one of which hit Delgado in the buttocks. Padilla was also shot at that time. As Delgado and Padilla were attempting to flee, petitioner shot in their direction again. One of the shots hit Padilla, who fell to the ground. Petitioner also shot in a different direction, and Delgado saw Mosqueda stagger and fall onto the sidewalk. Petitioner then ran away.

¶ 9        The medical examiner's testimony confirmed that Padilla had suffered from gunshot wounds

to his middle back and chest, the paths of which were consistent with his running away from the shooter. Mosqueda had suffered a gunshot wound to his right shoulder.

¶ 10    Petitioner advanced a defense of second degree murder, contending that he believed he was justified in the need to use deadly force for the protection of Mares. Petitioner testified in his defense that he saw the men beating Mares and fired a warning shot into the air. As he helped Mares up, he saw one of the men reach toward his waist. Although petitioner never saw a gun, he feared for his life and reacted by firing additional shots. He did not recall how many shots or that anyone was hit. He also testified that as he was running to his car, he saw a man running down the street shooting a gun. Mares and Herrera similarly testified to seeing an unknown man with a gun running down the street, and Mares testified that he saw that man shooting the gun.

¶ 11    The jury convicted petitioner of first degree murder as to Padilla and Mosqueda and of aggravated battery with a firearm as to the shooting of Delgado. The trial court sentenced him to two terms of natural life imprisonment for the murders and 10 years for aggravated battery with a firearm, to be served consecutively.

¶ 12    Petitioner filed a direct appeal, in which he argued that his counsel was ineffective for failing to impeach Delgado with prior inconsistent statements and that the imposition of consecutive sentences was improper. This court affirmed his conviction, but it corrected the mittimus to reflect that his sentences run concurrently. *People v. Mata*, No. 1-05-0527 (2007) (unpublished order under Illinois Supreme Court Rule 23).

¶ 13    In 2008, petitioner filed his initial postconviction petition. He argued, *inter alia*, that his trial counsel had been ineffective for failing to pursue a ruling on that aspect of his motion to suppress that dealt with the involuntariness of his videotaped statement. He also argued that his appellate counsel had been ineffective for failing to make an argument on direct appeal as to trial counsel's

ineffectiveness in this regard. This court affirmed the trial court's summary dismissal of the petition as frivolous and patently without merit. *People v. Mata*, 1-09-0657, 2011 WL 9684766, *4-5 (2011) (unpublished order under Illinois Supreme Court Rule 23).

¶ 14        Initially, this court found that petitioner's claim involving his trial counsel's ineffectiveness for not pursuing the motion to suppress his statement had been forfeited, because it was a claim that could have been raised on direct appeal. *Id.* at *4. However, this court also addressed the merits of petitioner's argument and held that the trial record showed that petitioner had given his statement freely and voluntarily, that he had been given *Miranda* warnings, and that he acknowledged that police had treated him well and fairly while in custody. *Id.* Accordingly, this court presumed that trial counsel's abandonment of that part of the motion to suppress had been a matter of sound trial strategy and that appellate counsel likewise could not be faulted for failing to argue trial counsel's ineffectiveness on direct appeal. *Id.* at *5. The supreme court thereafter denied a petition for leave to appeal.

¶ 15        In 2012, petitioner filed a successive postconviction petition. He alleged that his trial counsel had been ineffective for failing to present the testimony of a witness named William Rivera, who had given testimony before the grand jury supportive of petitioner's theory that he had fired gunshots only in defense of Mares. This court affirmed the trial court's determination that petitioner had failed to demonstrate the cause and prejudice required for the filing of a successive postconviction petition, as petitioner had provided no explanation as to why these claims, which stemmed from Rivera's grand jury testimony, could not have been raised in his initial postconviction petition. *People v. Mata*, 2016 IL App (1st) 122408-U, ¶ 18.

¶ 16        Also in 2012, petitioner filed a petition for writ of *habeas corpus* in federal court. His grounds for relief in that petition again focused on arguments concerning the suppression of his videotaped

statement, his trial counsel's ineffectiveness for failing to call Rivera as a trial witness, and whether he should have been convicted only of second degree murder. See *Mata v. Brannon*, No. 12-cv-1376, 2020 WL 5630433, *4 (N.D. Ill. Sept. 21, 2020). The district court ultimately found that all of petitioner's claims were procedurally defaulted, with the exception of a claim that his direct appellate counsel had been ineffective for not arguing trial counsel's ineffectiveness in abandoning the motion to suppress the videotaped statement. *Id.* at *5-8. However, the district court found that petitioner was not entitled to federal habeas relief on that claim because this court's determination as to the merits of that issue was not unreasonable. *Id.* at *8-11. The Seventh Circuit affirmed, but it did so in part on the basis that petitioner's claim as to his appellate counsel's ineffectiveness had also been procedurally defaulted because it had not been included in his petition for leave to appeal to the Illinois Supreme Court. *Mata v. Baker*, 74 F.4th 480, 488-89 (7th Cir. 2023).

¶ 17    In 2019, petitioner initiated the present action by filing *pro se* a petition for relief from judgment under section 2-1401. He later amended that petition *pro se* prior to the appointment of counsel. While the allegations of these *pro se* petitions are somewhat unfocused, the crux of petitioner's argument was that his convictions were void and should be vacated on the basis that he had been arrested pursuant to an "investigative alert" issued by CPD instead of an arrest warrant based upon a judge's finding of probable cause.[2] He relied upon this court's then-recent decision in *People v. Bass*, 2019 IL App (1st) 160640, *aff'd in part, vacated in part*, 2021 IL 125434. In *Bass*, this court held for the first time that "arrests based solely on investigative alerts, even those supported by probable cause, are unconstitutional under the Illinois Constitution." *Id.* ¶ 43.

---

[2] An "investigative alert" is the name of a method used within the CPD to communicate that an individual is wanted for a specific crime if an officer happens to come into contact with that individual. See *Sanders v. Cruz*, No. 08 C 3318, 2010 WL 3004636, *3 (N.D. Ill. July 29, 2010). Generally, arrests are made when an investigative alert provides that probable cause exists to arrest the person, even though no arrest warrant has been issued by a neutral magistrate. See *id.* The method was formerly referred to as a "stop order."

Petitioner also raised the exclusionary rule and asserted that prosecutors had engaged in misconduct for charging him following an illegal arrest. He also argued ineffective assistance of counsel on the part of his trial, appellate, and postconviction counsel stemming from the failure to move to quash his arrest, failure to file a motion under the fifth amendment, failure to contest probable cause, conceding the existence of probable cause, and failure to engage in meaningful adversarial testing of the testimony linking petitioner to the murders.

¶ 18    The trial court thereafter appointed the public defender of Cook County to represent petitioner in his petition under section 2-1401.

¶ 19    On July 12, 2021, appointed counsel for petitioner filed a supplemental petition for relief under section 2-1401. This supplemental petition incorporated the entirety of petitioner's original and amended *pro se* petitions, and it set forth the procedural history of petitioner's case. It also acknowledged that on April 15, 2021, the supreme court had vacated the portion of this court's opinion in *Bass* upon which petitioner's principal claim was based. See *People v. Bass*, 2021 IL 125434, ¶ 31. However, counsel pointed out that the supreme court had not reached a decision as to the constitutionality of arrests made pursuant to investigative alerts. Counsel thus went on to argue that the Illinois constitution's requirement that "[n]o warrant shall issue without probable cause, supported by affidavit" supported petitioner's claim that his warrantless arrest pursuant to an investigative alert had been unconstitutional. See Ill. Const. 1970, art. I, § 6. Counsel explained that on the night of March 16, 2002, CPD detectives had gone to petitioner's residence and arrested him without a warrant issued by a judge, instead seizing him based on an investigative alert issued by CPD. Counsel argued that the trial court's basis for suppressing evidence seized from petitioner's home—that police had plenty of time to obtain a warrant because judges were assigned to the same building where the detectives worked—applied equally to the suppression of

petitioner's statement. Counsel argued that petitioner's post-arrest statement was the product of an unconstitutional arrest and should have been suppressed for that reason.

¶ 20    On July 28, 2022, counsel for petitioner filed an amended supplemental petition under section 2-1401. Counsel attached this court's opinion in *People v. Smith*, 2022 IL App (1st) 190691, which had been issued on July 18, 2022, and he argued that it provided support for petitioner's argument that his arrest pursuant to an investigative alert was unconstitutional. The *Smith* majority's holding was that a defendant's arrest pursuant to an investigative alert violated the Illinois constitution, despite the fact that probable cause existed for arrest, where the police did not obtain a warrant despite having had six months to do so. *Id.* ¶¶ 66, 98-99.

¶ 21    On November 28, 2022, the State filed a motion to dismiss petitioner's action for relief from judgment. It argued that petitioner's claims were not cognizable as grounds for relief from judgment under section 2-1401. It also argued that petitioner's claims were untimely under that statute and failed to establish a void judgment such that the untimeliness could be excused.

¶ 22    No additional briefing appears to have occurred. The trial court conducted oral argument on August 21, 2023. At that hearing, petitioner's counsel argued that *Smith* provided support for the argument that petitioner's arrest had been unconstitutional and that the evidence subsequently obtained should have been suppressed. Counsel further urged the court to give weight to the deterrent effect that granting the petition would have on CPD's practice of noncompliance with the constitutional requirement of obtaining a warrant from a judge.

¶ 23    On December 13, 2023, the trial court entered a written order denying relief to petitioner under section 2-1401. The trial court first reasoned that the petition was untimely and that the petitioner was not challenging the voidness of his conviction in a way that would overcome the two-year limitation period for seeking relief.

¶ 24    However, the trial court then went on to address the merits of petitioner's arguments that his arrest violated the Illinois constitution and that the exclusionary rule should be applied to invalidate his conviction. In doing so, the trial court stated that a claim of this form could not be brought under section 2-1401 but instead was a constitutional argument that should be brought in a petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)). Again, though, the trial court went on to analyze that even if section 2-1401 allowed for consideration of this claim, it nevertheless failed on its merits. The trial court reasoned that petitioner's claim of illegal arrest went ultimately to the issue of whether his statement should be suppressed, and the appellate court had previously held that the trial record rebutted petitioner's contentions that his statement was made involuntarily. See *Mata*, 2011 WL 9684766, *4-5. The trial court stated, "Because the appellate court found that [petitioner's] statements were voluntary, he cannot now re-litigate that issue in the context of investigative alerts." The trial court found that even if the use of investigative alerts violated the state constitution, the good-faith exception to the exclusionary rule would apply to the statements that petitioner made after his arrest and would not require their suppression. See *People v. Erwin*, 2023 IL App (1st) 200936, ¶¶ 22-49. The trial court similarly rejected petitioner's claims as to ineffective assistance of counsel. The trial court found that this was a constitutional issue that should have been raised in a postconviction proceeding, not a section 2-1401 petition, but because the underlying issue had no merit, no prejudice could be shown based upon any of his previous attorneys' failure to raise the issue of his unconstitutional arrest. This appeal followed.

¶ 25                                                    ANALYSIS

¶ 26    On appeal, petitioner does not argue that the trial court erred in denying him relief from judgment under section 2-1401. Instead, his argument is that the attorney who was appointed to represent him with respect to that section 2-1401 petition failed to exercise "due diligence" by

continuing to pursue his claims in the context of a section 2-1401 petition instead of seeking to reframe them for presentation through a second successive postconviction petition. Petitioner contends that his claims (*i.e.*, that his conviction was void because his arrest pursuant to an investigative alert was unconstitutional and because his prior attorneys were ineffective for failing to raise that issue) were not cognizable as bases for relief under section 2-1401, but they would have been cognizable in a successive postconviction petition. He argues that his counsel should have recognized this defect and corrected it, particularly after the State argued in its motion to dismiss that postconviction proceedings provided the only procedural method for pursuing the claims raised.

¶ 27     Section 2-1401 is a comprehensive statutory procedure, applicable in both civil and criminal proceedings, that authorizes a trial court to vacate or modify a final order or judgment. *People v. Thompson*, 2015 IL 118151, ¶ 28. Ordinarily, a petition seeking relief under section 2-1401 must be filed more than 30 days from the entry of a final judgment or order but not later than 2 years thereafter. See 735 ILCS 5/2-1401(a), (c) (West 2018). However, an exception to this 2-year deadline applies when the petition challenges a "void" order or judgment. *Thompson*, 2015 IL 118151, ¶ 29. Only two circumstances exist in which a judgment will be considered void for purposes of this exception to the two-year deadline: (1) when the judgment is entered by a court that lacked personal or subject matter jurisdiction, and (2) when the judgment is based on a statute that is facially unconstitutional and thus void *ab initio*. *People v. Stoecker*, 2020 IL 124807, ¶ 28.

¶ 28     In this case, the trial court dismissed petitioner's section 2-1401 petition because it was filed 14 years after his 2005 conviction and thus long after expiration of the statutory 2-year deadline. See 735 ILCS 5/2-1401(c) (West 2018). The trial court found that petitioner's claim failed to qualify as a challenge to a void judgment because he was not alleging that the court lacked personal

or subject matter jurisdiction, and he was not making a facial constitutional challenge to any specific statute. The trial court also stated that petitioner's claim was a constitutional argument that should have been brought through a petition under the Post-Conviction Hearing Act.

¶ 29    As stated above, petitioner's argument is that his appointed counsel failed to exercise "due diligence" by not anticipating an adverse ruling based upon these obvious infirmities and therefore seeking to present his claims in the context of a successive postconviction petition. An action under the Post-Conviction Hearing Act would not require establishing that a statute was facially unconstitutional and void *ab initio*, but rather it would allow for broader consideration of the effect of constitutional deprivations that occurred in the proceedings that resulted in petitioner's conviction. See 725 ILCS 5/122-1(a)(1) (West 2018).

¶ 30    "Due diligence" refers to the standard of performance that the supreme court has held is required of an attorney appointed to represent an individual who has filed a petition challenging a conviction under section 2-1401. See *Stoecker*, 2020 IL 124807, ¶ 42. A petitioner who files a petition under section 2-1401 seeking to collaterally attack a judgment of conviction has no constitutional or statutory right to counsel. *Id.* ¶¶ 35-36. The appointment of counsel in such proceedings is a matter of the trial court's discretion. *Id.* ¶ 36. When this occurs, appointed counsel's duty in a section 2-1401 proceeding is to provide "the same due diligence as any lawyer would be required to perform in assisting his or her client." *Id.* ¶ 42. To that end, counsel has an obligation, to the best of his or her legal ability, to make a cogent argument in support of the petitioner's section 2-1401 claims and to overcome any procedural hurdles where that can legally and ethically be done. *Id.* Counsel's obligations might also include amending a petition, responding to motions to dismiss, standing on the petition, or alternatively withdrawing as counsel. *Id.* ¶ 43. However, a claim of lack of due diligence sufficient to warrant remand depends on an

arguably meritorious claim. *Id.* ¶¶ 43, 45. Under any standard of due diligence, unless counsel's deficient performance could have reasonably affected the outcome of the proceedings, there is no reason to remand the matter for further proceedings. *Id.* ¶ 45.

¶ 31        We reject petitioner's argument that this case should be remanded for further proceedings due to the purported lack of due diligence by his appointed counsel. Our principal basis for this holding is the fact that, after petitioner filed his opening brief on appeal, the supreme court issued its decision in *People v. Clark*, 2024 IL 127838. In that case, the supreme court rejected the rationale that the appellate court had employed in *Bass* and *Smith* to reach the conclusion that warrantless arrests pursuant to investigative alerts violate the Illinois constitution even where probable cause exists. *Id.* ¶¶ 55-63. Instead, the supreme court held that the Illinois constitution is not violated by the use of investigative alerts to make warrantless arrests for felonies based upon probable cause. *Id.* ¶ 63. Given this holding by our supreme court, we have no basis to believe that petitioner continues to have an arguably meritorious claim that his arrest was unconstitutional because it involved an investigative alert or that his counsel's failure to seek to reframe his claims for presentation in a supplemental postconviction petition affected the outcome of the proceedings at issue.[3]

¶ 32        In his reply brief, petitioner contends that because *Clark* was not issued until a year after the conclusion of appointed counsel's representation of him, we should evaluate counsel's conduct without regard to *Clark*. Petitioner argues that during the time of representation, support existed in the case law for his claim of unconstitutional arrest, and counsel thus failed to exercise due diligence by not seeking to pursue his claims through a successive postconviction petition.

---

[3] The fact that probable cause existed for petitioner's arrest was conceded by his trial counsel at the suppression hearing, and the trial court also made a specific finding that probable cause existed for arrest.

¶ 33    We reject this argument also. But we observe that, even prior to *Clark* and during the timeframe of the representation at issue, it does not appear to us that the ultimate merit of petitioner's claims would have been any greater if counsel had presented them in a successive postconviction petition. To obtain leave to do so, petitioner would have had to show both "cause" for failing to raise his claim in earlier proceedings and "prejudice" resulting from that failure. See 725 ILCS 5/122-1(f) (West 2018). Although the decisions in *Bass* and *Smith* could arguably have allowed petitioner to show "cause," we do not believe that petitioner could have shown "prejudice" because the good-faith exception to the exclusionary rule would allow for the admission of his videotaped statement at trial even if it was taken following an arrest pursuant to an investigative alert. See *Erwin*, 2023 IL App (1st) 200936, ¶ 6.

¶ 34    Even if, prior to *Clark*, support existed for the argument that petitioner's arrest pursuant to an investigative alert was unconstitutional, this fact would not have automatically entitled petitioner to any relief. *Id.* ¶ 22. Instead, it would have resulted in an inquiry to determine whether that unconstitutional arrest warranted the suppression of his statement under the exclusionary rule, and that inquiry would have entailed consideration of the good-faith exception to the exclusionary rule. *Id.* ¶¶ 23-24 (citing *People v. LeFlore*, 2015 IL 116799, ¶¶ 22-25). As this court has explained:

> "There is no constitutional right to the suppression of evidence obtained as a result of an illegal search or seizure. *LeFlore*, 2015 IL 116799, ¶ 22. The exclusionary rule is a judicially created remedy whose sole purpose is to deter future constitutional violations; thus, it is to be applied only where its deterrence benefits outweigh the substantial social costs of excluding reliable, probative evidence of guilt. *Id.* ¶ 23. When the police conduct a search or seizure based on an 'objectively reasonable good-faith belief' that it is lawful, the rule's

deterrence rationale has little or no force, and the exclusion of evidence is not warranted. (Internal quotation marks omitted.) *Id.* ¶ 24." *Erwin*, 2023 IL App (1st) 200936, ¶ 28.

¶ 35    In cases that involved challenges to arrests pursuant to investigate alerts, courts have recognized that as of the 2002 timeframe (*i.e.*, when petitioner's arrest occurred), the legal landscape was such that a reasonable law enforcement officer would have been acting under the good-faith belief that warrantless arrests pursuant to investigative alerts were lawful as long as probable cause existed. See, *e.g.*, *id.* ¶ 48 (arrest occurred in 2003); *People v. Mathis*, 2024 IL App (1st) 211102, ¶ 76 (arrest occurred in 2011); *People v. Spencer*, 2023 IL App (1st) 200646-U, ¶¶ 94-96 (arrest occurred in 2013). It was not until 2019, when this court issued its decision in *Bass*, that the constitutionality of CPD's longstanding use of stop orders or investigative alerts was called into question by Illinois courts that had been long aware of the practice. See *Erwin*, 2023 IL App (1st) 200936, ¶¶ 35-41. Because of this, courts have relied upon the good faith exception and concluded that suppression of evidence was not warranted merely because a defendant's arrest was pursuant to an investigative alert. See, e.g., *id.* ¶ 49; *Mathis*, 2024 IL App (1st) 211102, ¶¶ 76-77; *Spencer*, 2023 IL App (1st) 200646-U, ¶ 94.

¶ 36    We have no reason to think that any different conclusion would have been reached in this case if petitioner's counsel had sought to file a successive postconviction petition on his behalf. In fact, the trial court below reached the merits of this argument, found that the good faith exception was applicable in petitioner's case, and ruled that petitioner would not have been entitled to suppression of the videotaped statements that he made following his arrest. It found that suppression was also not warranted due to the appellate court's prior holding that petitioner's statement had not been made involuntarily. For these reasons, we conclude that appointed counsel's decision to continue pursuing petitioner's claims in the context of a section 2-1401 action

instead of seeking to reformulate them for presentation through a successive postconviction petition had no effect on the ultimate outcome of these proceedings.

¶ 37                                                    CONCLUSION

¶ 38        For the foregoing reasons, the judgment of the trial court denying petitioner relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2018)) is affirmed.

¶ 39        Affirmed.