2025 IL App (1st) 241264-U

SECOND DIVISION
October 14, 2025

No. 1-24-1264

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20CR3945 |
| | ) | |
| TERRELL VINING | ) | Honorable |
| | ) | Tyria B. Walton, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's sentence of 12 years for aggravated discharge of a firearm is affirmed where the sentencing court properly considered the nature and circumstances of the offense in crafting the sentence.

¶ 2    Following a bench trial, defendant Terrell Vining was convicted of aggravated discharge of a firearm and aggravated unlawful use of a weapon (AUUW). The trial court subsequently sentenced him to 12 years in prison. On appeal, defendant solely argues that the trial court relied on improper factors in imposing his sentence, including facts inherent in the offense and speculation about potential harm.

¶ 3 Defendant was charged by indictment in March 2020 with one count of aggravated discharge of a firearm and four counts of AUUW. Defendant's bench trial began in November 2023, and the following evidence was presented.

¶ 4 Chicago Sergeant Joseph Chilpala testified that in February 2020, he was an officer assigned to the gang enforcement unit for Area 2. On February 8, 2020, he was on patrol with his partner Officer Kevin O'Mara. At approximately, 10:20 p.m., he received a Shot Spotter report of gunshots at 8103 South Green Street. Sergeant Chilpala explained that Shot Spotter "receives information from various sensors located throughout the city" and it "triangulates a GPS location for the gun fire." Shot Spotter will provide the "exact address" and send an alert. The report indicated that three subjects had fled southbound with the armed subject wearing a green jacket with a fur collar. The sergeant proceeded to that location and observed three males running south across South 83rd Street, including a man in a green jacket. The men continued to run into an alley, and officers began to pursue on foot. Sergeant Chilpala saw them run to a house located at 8315 South Peoria and attempt to enter the home. When the sergeant arrived at that house, two of the subjects were being detained by other officers. He identified defendant in court as one of the detained individuals. When the sergeant observed defendant in front of 8315 South Peoria, defendant was wearing a green jacket with a fur collar.

¶ 5 After the subjects were detained, Sergeant Chilpala backtracked to where the men had been running and located a chrome .9-millimeter handgun in the north gangway of 8315 South Peoria. This handgun was recovered and inventoried. He identified the handgun in court as the one he recovered in February 2020.

¶ 6 Chicago Lieutenant Dennis O'Keefe testified that in February 2020, he was a sergeant with the sixth district, which included 8103 South Green Street. He received the Shot Spotter

alert and responded to the scene. He was pursuing parallel to the foot chase and was in communication with Sergeant Chilpala. The lieutenant went to 8315 South Peoria and was able to detain two of the subjects. He identified defendant in court as one of the men detained. He described defendant as wearing a dark colored coat with fur around the hood. Lieutenant O'Keefe was notified by Sergeant Chilpala that the sergeant had recovered a firearm. The lieutenant stated that the decision to perform a gunshot residue (GSR) test was up to a detective or a supervisor, but none were on the scene. He also explained that the GSR test is typically performed when someone has been shot and since there was no information that a person had been struck, the test was not ordered.

¶ 7     Chicago Officer Jennifer Burmistrz reported to 8103 South Green Street with her partner. She walked to the next address, 8101 South Green Street, and found two spent shell casings in the front yard. The casings were recovered and entered into inventory. She identified the two spent casings as .9-millimeter shell casings.

¶ 8     Marc Pomerance testified that he was employed as a forensic scientist in the firearms and tool mark section of the Illinois State Police division of forensic services. In 2021, he was assigned to examine evidence from this case. He received the two .9-millimeter fired cartridge cases and a Bryco Arms Model Jennings .9-millimeter Lugar semiautomatic pistol. He was asked to determine if the pistol was functional, and if so, to determine whether the two fired cartridges were fired from that pistol. Pomerance then conducted a test firing and found that the gun was working properly. He proceeded to fire the test shots and compared them to the cartridge cases recovered by police. After comparing the test shots to the recovered cases, Pomerance opined that the two fired cartridge cases recovered by police were fired from the recovered handgun.

¶ 9    The parties stipulated to the admission of a compact disc containing the surveillance video from a "POD" camera that captured the shooting. The parties agreed that the video fairly and accurately depicted the events that occurred on February 8, 2020, at 10:22 p.m. at 8103 South Green Street, Chicago, Illinois and the equipment was in proper working order at all times. The video showed defendant and his two companions walking in a residential area and crossing the street at approximately 10:20 p.m. on February 8, 2020. Defendant is shown wearing a dark jacket with fur around the hood. Multiple two-flat residential homes are clearly visible, including some with lights on in the front of the home. When a vehicle enters the scene, defendant and his companions stopped, turned around, and walked closer to the vehicle. The men continued to watch as the vehicle turns left onto the block next to where the men were standing. As the driver began to exit the vehicle, defendant fired multiple shots toward the vehicle. The driver quickly reentered the vehicle. Defendant then began to run while he continued to fire the gun toward the vehicle and the residential homes. The driver of the vehicle quickly drove in the opposite direction and away from the men. The video shows the flare of gunfire from the gun in defendant's hand.

¶ 10    After the State rested its case, defendant moved for a directed finding, which the trial court denied. Defendant rested without presenting any evidence.

¶ 11    Following closing arguments, the trial court found defendant guilty of one count of aggravated discharge of a firearm and three counts of AUUW.

¶ 12    At the May 2024 sentencing hearing, the State asked to present evidence in aggravation that defendant committed a murder three weeks prior to the shooting at issue in this case. Defendant objected to this evidence as irrelevant. The trial court allowed this evidence in

aggravation over defense objection. The State then presented three police officers as witnesses who each recounted their investigation of the murder.[1]

¶ 13    Chicago Detective Arthur Carlson testified that on January 15, 2020, he was assigned to investigate a homicide located at 8259 South Peoria. At the scene, the detective observed shell casings and a black Chevy Malibu with blood in the car and "bullet strike damage" to the rear window. He spoke with a witness named Carl Jackson. Detective Carlson learned that Jackson and Sasha Moore had been occupants of the Malibu. Moore had already been taken by ambulance from the scene. She had been shot in the head and died from her injuries. His investigation revealed that Moore had been struck by gunfire near the corner of West 83rd Street and South Peoria before stopping at 1414 West 83rd Street.

¶ 14    Jackson told the detective that Moore had placed an ad on Facebook for the sale of cannabis. She received a response from someone named Chris Paul. Detective Carlson then obtained a search warrant for the Facebook account of Chris Paul. The account showed the email address associated with account was "Terrell.Vining.9" and he identified defendant as the holder of this account. He viewed Facebook messages between defendant and Moore detailing the time and location for the sale of cannabis on January 15, 2020. Based on his investigation, he identified defendant as the suspect in the murder. Detective Carlson testified that Jackson was later murdered in 2021.

¶ 15    Chicago Detective James Smith Detective testified that on February 1, 2020, he conducted a photo array with Jackson, and Jackson identified defendant as the individual who shot and killed Moore. Assistant State's Attorney (ASA) Sarah Karr testified that on February 1,

---

[1] We briefly recite this testimony, but defendant has not challenged its admission on appeal.

2020, she was assigned to the felony review unit and took a video statement from Jackson in which he identified defendant as the person who shot Moore on January 15, 2020.

¶ 16    The State also submitted Jackson's grand jury testimony and defendant's disciplinary records from the Cook County Department of Corrections, including fights, drug possession, possession of a shank, lighting a jail cell on fire, and flooding a jail tier.

¶ 17    In mitigation, defense counsel referred to defendant's presentence investigation report and argued that the evidence of the murder investigation was "irrelevant" to the case before the court. Counsel contended that "[t]here was no victim" in the charge at issue. Counsel noted that defendant was found guilty of shooting at an occupied vehicle. Counsel argued that defendant was 18 years old at the time of the aggravated discharge offense and did not have a prior adult record. Counsel acknowledged that defendant had spent time in juvenile detention but did not have his juvenile records. Counsel asked the court to sentence defendant to probation.

¶ 18    After considering the evidence in aggravation and mitigation, the trial court sentenced defendant to a term of 12 years in the Department of Corrections, to be served at 85% with credit for 1544 days in pretrial custody. In its ruling, the court explicitly stated that it did not consider the evidence of the murder investigation in aggravation. Defendant filed a motion to reconsider his sentence, which the court denied.

¶ 19    On appeal, defendant argues that the trial court erred in imposing his sentence because the court relied on improper factors in crafting defendant's sentence, including: (1) a factor implicit in the offense of aggravated discharge of a firearm, and (2) speculation about potential harm unsupported by the record. The State responds that the trial court properly weighed the factors and imposed an appropriate sentence based on the nature and circumstances of the case.

¶ 20    We initially consider whether defendant's claims have been forfeited on appeal. Defendant asserts that his sentencing claims were properly preserved in his motion to reconsider his sentence. The State responds that defendant's motion failed to assert these claims with sufficient specificity. To preserve an error on appeal, defendant must object at trial and raise the issue with some specificity in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988); *People v. Mendoza*, 354 Ill. App. 3d 621, 627 (2004). Failure to specify grounds in writing in a posttrial motion can constitute forfeiture of the issue on review in the absence of plain error. *Id*. at 187.

¶ 21    In his motion, defendant alleged multiple grounds for the court to reconsider his sentence, including that the court "improperly considered in aggravation matters that are implicit in the offense." Defendant did not detail what element of the offense the court improperly considered, nor did he allege that the court improperly speculated about potential harm in its findings. Further, defense counsel did not address these alleged improper factors at the hearing on the motion. We find defendant's postsentencing motion was not sufficiently specific as to alert the trial court to the alleged improper factors relied on at sentencing and deprived the court of the opportunity to address these alleged errors. See *People v. Panozzo*, 2022 IL App (3d) 190499, ¶ 35 (quoting *People v. Coleman*, 391 Ill. App. 3d 963, 971 (2009)) ("A posttrial motion will be deemed sufficient to preserve a claim of error where it alerts 'the trial court to the alleged error with enough specificity to give the court a reasonable opportunity to correct it.' "). Since the motion did not adequately inform the trial court of the alleged errors, these claims were forfeited.

¶ 22    Despite defendant's failure to preserve this issue, he asks this court to review his claims under the plain error rule. Supreme Court Rule 615(a) states that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects

affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The plain error rule "allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007) (citing *Herron*, 215 Ill. 2d at 186-87). However, the plain error rule "is not 'a general saving clause preserving for review all errors affecting substantial rights whether or not they have been brought to the attention of the trial court.' " *Herron*, 215 Ill. 2d at 177 (quoting *People v. Precup*, 73 Ill. 2d 7, 16 (1978)). Rather, "Illinois's plain error rule is a narrow exception to forfeiture principles." *People v. Jackson*, 2022 IL 127256, ¶ 18.

¶ 23     Defendant carries the burden of persuasion under both prongs of the plain error rule. *People v. Lewis*, 234 Ill. 2d 32, 43 (2009). Defendant asserts that this alleged error falls under the first prong because the evidence at sentencing was closely balanced and the consideration of improper factors tipped the scale in aggravation. However, the first step under either prong of the plain error doctrine is to determine whether there was an error. *People v. Sebby*, 2017 IL 119445, ¶ 49.

¶ 24     Generally, the trial court has broad discretionary authority in sentencing a criminal defendant. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). But whether a sentencing court relied on an improper factor in imposing a sentence presents a question of law to be reviewed *de novo*. *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 49. Defendant bears the burden to affirmatively establish that the sentence was based on improper considerations and we will not

reverse a sentence imposed by a trial court unless it is clearly evident the sentence was improperly imposed. *Id.*

¶ 25     We first consider defendant's assertion that the trial court improperly relied on a factor inherent in the offense. More specifically, defendant argues that the trial court erred in considering the fact that defendant shot at another person as an aggravating factor because the firing of a gun in the direction of another is an element of aggravated discharged of a firearm.

¶ 26     In crafting a sentence, the trial court may not consider a factor that is an element of the offense as an aggravating factor. *People v. Phelps,* 211 Ill. 2d 1, 11-12 (2004). "Stated differently, a single factor cannot be used both as an element of an offense and as a basis for imposing 'a harsher sentence than might otherwise have been imposed.' " *Id.* at 11-12 (quoting *People v. Gonzalez,* 151 Ill. 2d 79, 83- 84 (1992)).

¶ 27     However, the "trial court is not required to refrain from any mention of sentencing factors that constitute elements of the offense." *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 15. The court may consider the nature and circumstances of the offense, including the nature and extent of each element of the offense committed by the defendant. *Bowen*, 2015 IL App (1st) 132046, ¶ 50 (citing *People v. Saldivar,* 113 Ill. 2d 256, 268-69 (1986)). The mere reference to the existence of such a factor is not reversible error. *Id*. We consider the record as a whole to determine whether the trial court improperly imposed a sentence and will not focus on isolated statements. *Id*. Further, a defendant's conduct causing the threat of serious harm may be considered a statutory aggravating factor and accorded weight in favor of imposing a more severe sentence. 730 ILCS 5/5-5-3.2(a)(1) (West 2022).

¶ 28     Here, defendant was convicted of aggravated discharge of a firearm. Under the Criminal Code of 2012, a person commits aggravated discharge of a firearm when he or she knowingly or

intentionally "discharges a firearm in the direction of another person or in the direction of a vehicle he or she knows or reasonably should know to be occupied by a person." 720 ILCS 5/24-1.2(a)(2) (West 2018). Aggravated discharge of a firearm is a Class 1 felony. 720 ILCS 5/24-1.2(b) (West 2018). The sentencing range for a Class 1 felony is a term between 4 and 15 years of imprisonment. 730 ILCS 5/5-4.5-30(a) (West 2020). The trial court imposed a sentence of 12 years.

¶ 29    Before imposing the sentence, the trial court indicated that it did not consider the evidence of the murder investigation and made the following findings on the record.

> "The sentence of this court is going to be -- and this court has considered that he doesn't have a background but I am also considering the nature of the charge [itself], the fact of when this incident occurred in the public residential street that, no, there is not a victim who appeared in court but there was a person that was shot at, [defendant] didn't have a victim because he missed, and so even though that person wasn't here I still deem that individual to be a victim even though he is charged with aggravated discharge of a firearm, and thankfully the stray bullet which has no eyes and direction didn't go through a window and strike an innocent person who may have been sitting in their home."

¶ 30    According to defendant, the court's reference to the fact that defendant fired a gun in the direction of a person constituted an improper use of an element of the offense as an aggravating factor. However, when read in context, the court explicitly prefaced this statement by observing that it was "considering the nature of the charge" before describing the circumstances of the offense.

¶ 31    Additionally, the trial court explained the basis for the imposed sentence at the hearing on defendant's postsentencing motion.

"So when I gave this sentence, I considered all factors in aggravation that were presented to me by the State collectively ***.

I considered the factors -- the facts that were in evidence primarily which supports my decision as it relates to his sentence. This was a Class 1 felony. The possible sentence ranged from 4 to 15 years. Could have been extendable based on other things but the 12-year sentence that I gave him was within the guidelines and purview of what the statute allows me to sentence him as. The factors that were proven by the State during their trial are what really and truly warrant the sentence that I gave to him."

¶ 32    The trial court further explained its reasoning to support the imposed sentence. As we previously noted, the trial court is allowed to consider the nature and circumstances of the offense, including the nature and extent of each element of the offense committed by the defendant. *Bowen*, 2015 IL App (1st) 132046, ¶ 50. Further, this court has held that the threat of serious harm is not an inherent element of the offense of aggravated discharge of a firearm and, thus, the court can consider the threat of serious harm arising from the defendant's act as an aggravating factor at sentencing. *People v. Ellis*, 401 Ill. App. 3d 727, 731 (2010). The *Ellis* court compared the firing of a "warning shot" that is intended to go "six feet over someone's head to a shot that sends a bullet flying within an inch of someone's ear." The reviewing court thus concluded that "not every aggravated discharge of a firearm threatens the same amount of harm." *Id.*

11

¶ 33    This is precisely what the trial court did here. The court clearly stated that it considered the nature and circumstances of the offense based on the evidence presented at trial. Our review of the record fails to show that the court considered this element of aggravated discharge of a firearm as an improper aggravating factor. The court was merely commenting on the nature and circumstances of the offense, *i.e.,* there was no victim because defendant fired a gun at an individual and missed. These are proper sentencing considerations, and we do not find any error in the trial court's statements.

¶ 34    Defendant also contends that the trial court improperly considered potential harm unsupported by the record as an aggravating factor. Specifically, defendant asserts that the court improperly speculated that a bullet could have gone through the window of a residence and struck an innocent person. According to defendant, this comment by the court was without a basis in the record. Defendant relies on *People v. Jones*, 2024 IL App (1st) 221555, for support, but that decision has since been vacated pursuant to a supervisory order from the Illinois Supreme Court, and a new opinion has not yet been filed. "Once an appellate decision has been vacated by our supreme court, it 'carries no precedential weight.' " *People v. Erwin*, 2023 IL App (1st) 200936, ¶ 18 (quoting *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 66 (2006). The State responds that the court's comment was supported by the video depicting the shooting on a residential street. We agree with the State.

¶ 35    Again, the court prefaced these comments by stating that it was "considering the nature of the charge," including the fact that the shooting occurred on a "public residential street." See *Bowen*, 2015 IL App (1st) 132046, ¶ 50 (the trial court may consider the nature and circumstances of the offense, including the nature and extent of each element of the offense committed by the defendant). Our review of the evidence clearly supports the trial court's

observation.

¶ 36      As previously discussed, the video depicted defendant and his two companions walking along a residential block at approximately 10:20 p.m. on February 8, 2020. Multiple two-flat residential homes are clearly visible, including some with lights on in the front of the home. When a vehicle turned onto the block next to where defendant and his companions were walking, the men stopped and watched the vehicle. As the driver began to exit, defendant fired multiple shots toward the vehicle. These shots were fired in close proximity to several homes. Defendant then ran while continuing to fire the gun toward the vehicle and the residential homes. The potential for additional harm was clearly visible in this video. The trial court's consideration of the location of a shooting in a residential neighborhood, as depicted in the video, was part of its review of the seriousness of the offense. Thus, the trial court did not consider an improper sentencing factor when it observed the inherent risk of firing a weapon on a public residential street. Accordingly, we conclude that no error occurred in the trial court's observations about the circumstances of the shooting.

¶ 37      Since we have concluded that no error occurred here, there cannot be a plain error. See *People v. Johnson*, 218 Ill. 2d 125, 139 (2005) ("there can be no plain error if there is no error"). Thus, defendant's sentencing claim fails.

¶ 38      Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 39      Affirmed.